ALEXANDER et al. v. THEATRE GUILD, Inc., et al.

District Court, S. D. New York. April 26, 1927.

Copyrights ☞83—Evidence held to negative infringement of copyright on play "The Full of the Moon" by play "They Knew What They Wanted."

Evidence *held* to show that copyright of play "The Full of the Moon," an unproduced romantic tragedy, was not infringed by successful realistic comedy, "They Knew What They Wanted."

In Equity. Suit by Joseph Grubb Alexander and others against the Theatre Guild, Inc., and others. Bill dismissed.

Decree affirmed 26 F.(2d) 742.

Siegel & Corn, of New York City (Samuel Conrad Cohen, Jacob H. Corn, Isaac Siegel, and Philip Cohen, all of New York City, of counsel), for complainants.

Leventritt, Riegelman, Carns & Schwarz, of New York City (Charles A. Riegelman, of New York City, of counsel), for defendants Theatre Guild, Inc., Bennett, and Lord.

Hardin & Hess, of New York City (Ernest Angell, of New York City, of counsel), for defendant Howard.

AUGUSTUS N. HAND, District Judge. This is a suit for the alleged infringement of complainants' play "The Full of the Moon," copyrighted October 25, 1923, by the play "They Knew What They Wanted," composed by the defendant Sidney Howard. The latter is a realistic comedy which has had a successful run, while the complainants' play is a tragedy that has never been put on the stage.

I am entirely convinced that the defendants' witnesses have testified truthfully, and they fortified their oral statements by satisfactory documentary evidence which shows that there could have been no appropriation of complainants' ideas or literary form. Both the early notes of Howard's plot, which he said were made in the summer of 1922, and the two acts of the scenario, typewritten in or about the month of March, 1923, by Miss Lyon, since deceased, clearly indicate that the general structure and dominant ideas of the plot were formulated long before complainants' play could possibly have come to Howard's knowledge. I have read the notes, except so far as the unfamiliar and somewhat difficult handwriting prevented, and the two remaining acts of Howard's scenario, as well as the copyrighted text of "The Full of the Moon" and the book containing "They Knew What They Wanted." My impressions at

the trial are further strengthened by this examination, so that I find the subject-matter of these plays so very different as to dispel any likelihood of appropriation.

The complainants' play is a tragedy, in which uncontrolled passions of husband, wife, and lover, as well as the crippled girl, Nannette, drove them like fate in the Greek tragedies to their doom. Hugo is a romantic immoral soldier of fortune, and he and all the other characters in "The Full of the Moon" are types. They belong in pseudo-classical and not modern categories, even though Hugo sometimes utters the contemporary philosophical ideas of a sophisticated college student.

On the other hand, Joe is an unmoral child of the logging camps and fruit orchards of the West, with the familiar mixed-up ideas and rude superficial jargon of his class—a man of strong passions and prejudices, but of kind heart and primitive loyalties. He is fundamentally good in his irresponsible way, and his intentions are decent, though not steady enough to give him much real character.

It is interesting to notice that both in Howard's written notes and the fragments of his scenario, which preceded the date of complainants' copyright, the bride was apparently in love with Joe up to the time he left Tony's ranch. This treatment (subsequently abandoned) of the relations of Amy and Joe afforded more resemblance to the love affair in complainants' play than the scheme which Howard finally adopted. After careful examination of the two plays, I think the only striking feature common to each is the accident to the bridegroom on the day of the wedding. A physical injury to husband or wife has frequently been employed in literature to furnish a temptation to the remaining spouse to yield to the wooing of a lover. That such an incident should have been described by two authors as occurring on the wedding day does not seem to me a remarkable coincidence. Indeed, I should be surprised if sufficiently thorough search would not discover a precise counterpart in prior literature, though none has been brought to my notice.

But, irrespective of this, I regard the plays as utterly different. The passionate romantic figures of complainants' tragedy could never have foreshadowed Tony and Amy and Joe, with their thoroughly practical views of life. As Howard wrote of Tony on one of the pages of his first manuscript: "Old Tony is a philosopher—a pragmatist of an inarticulate, but thorough, kind." No craftsman of Howard's talent would have been tempted to borrow from such an alien field of dramatic literature. He says he never heard of "The Full of the Moon" until this suit was brought. I believe him, for he testified and seemed like an honest man, and all the probabilities bear him out. The practical everyday philosophy of Howard's characters is as far removed as possible from that of the passion-driven figures that pass across complainants' stage. Each play is interesting, but they have nothing really in common but incidents readily derivable from the so-called "public domain" of literature.

The bill is dismissed, with costs. Settle decree on notice.